IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CIVIL ACTION NO.:  3:23-cv-04987-CMC |
|   | ) |
| Plaintiff, | ) |
|   | ) |
| v. | ) |
|   | ) |
| $524,015.40 IN UNITED STATES CURRENCY, | ) |
| ASSET ID: 23-DEA-704737 | ) |
|   | ) |
| Defendant *In Rem*. | ) |

**UNITED STATES' COMPLAINT FOR FORFEITURE *IN REM***

The Plaintiff, United States of America, brings this complaint and alleges as follows, in accordance with Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions.

**NATURE OF THE ACTION**

1. This is a civil action *in rem* to forfeit to the United States of America funds in the amount of $524,015.40 in U.S. Currency ("Defendant Currency"), pursuant to 21 U.S.C. § 881(a) and 18 U.S.C. § 981. Defendant Currency constitutes proceeds from the sale of Real Property located at 2795 Peachtree Road, NE, Unit 909, Atlanta, GA ("Atlanta Property"). The United States seeks forfeiture based upon a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Currency constitutes, or is traceable to:

(a) property involved in maintaining a drug-involved premises as set forth in 21 U.S.C. § 856(a)(1); and

(b) property involved in and property facilitating a Controlled Substances Act violation as set forth in 21 U.S.C. § 841 et al.

(b) property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or 1956(a)(1)(B)(i) and/or 1957;

(c) property involved in an illegal money transmitting business, in violation of 18 U.S.C. § 1960;

(d) proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(h).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355. This Court has *in rem* jurisdiction over the Defendant Currency pursuant to:

(a) 28 U.S.C. § 1355(b)(1)(A), because acts or omissions giving rise to the forfeiture occurred in the District of South Carolina; and

(b) 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in this district pursuant to 28 U.S.C. § 1395.

## THE DEFENDANT *IN REM*

3. The Defendant Currency consists of $524,015.40 in U.S. Currency from the sale

of real property known and numbered as 2795 Peachtree Road, NE, Unit 909, Atlanta, GA, TMS#: 17-0100-0004-124-7 ("Atlanta Property"), with all appurtenances, improvements, and attachments thereon, and as more fully described in Attachment A.

4.      Custody of the Defendant Currency was subsequently transferred to the United States Marshals Service ("USMS"). The Defendant Currency is currently on deposit in this district in an account under the control of the USMS.

5.      In accordance with the provisions of 19 U.S.C. § 1606, the Defendant Currency has a total domestic value of approximately $524,015.40.

## KNOWN POTENTIAL CLAIMANTS

6.      The known individuals whose interests may be affected by this litigation are:

  (a)   Victor Ernesto Villagomez Sanchez may have an interest in the Defendant Currency as the Atlanta Property was titled in his name.

7.      Pursuant to the pleading requirements of Supplemental Rule G(2)(f), Plaintiff alleges that there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Currency is subject to forfeiture to the United States, based in part upon the following:

  (a)   The drug trafficking business is primarily an all-cash business, which necessitates that those involved in drug trafficking often transport and store large amounts of currency. It is common in the drug trafficking business for money to be bundled in increments of $1,000 to $10,000, depending on

      the size of the transaction. Such bundling of currency makes it easy for a buyer to exchange specified amount of bundles for a specified amount of drugs and eliminates the need to count each and every bill, particularly among individuals familiar with each other. During and after law enforcement encounters, it is common for those involved in transporting illegal drugs and/or drug-related currency to give false, changing, inconsistent, and/or incomplete explanations regarding the nature and purposes of the trip, or to give explanations which defy common sense.

(b)    The Interstates in Georgia link drug source states to other parts of the country and are the east coast's major drug corridors. Drug traffickers frequently transport drug proceeds and monies intended to purchase large quantities of drugs to further their drug trafficking enterprise via the Interstate routes in Georgia.

(c)    Beginning in July 2021, agents began an investigation into a Mexican-based DTO/MLO with ties across the United States. The investigation identified South Carolina residents, Leroy Donnell Dixon, Jr., ("Dixon") and Tahtianna Canty ("Canty"), as receiving narcotics in the mail from Arizona and California, along with in-person deliveries of narcotics and money pick-ups at 1380 Crowndale Drive, Sumter, South Carolina, and other locations in South Carolina. The investigation also revealed that Dixon with the

assistance of Canty, distributed fentanyl, cocaine, crystal methamphetamine, and marijuana in Richland and Sumter counties in South Carolina. The investigation further revealed that a Colombian citizen, SOI-3, obtained drug proceeds from Dixon to be laundered on behalf of the Mexican-based MLO.

(d)   On March 11, 2022, a traffic stop was conducted on an Uber car that SOI-3 was a passenger in after law enforcement watched SOI-3 depart Dixon's residence in Sumter, South Carolina. During the course of the traffic stop, law enforcement recovered and seized approximately $90,000 in U.S. Currency. SOI-3 was not arrested, however, the investigation continued.

Ultimately, SOI-3 was charged with federal money laundering violations and arrested on June 23, 2022. SOI-3 admitted to picking up money around the country for the DTO/MLO. At the time of his arrest, he was found to be in possession of numerous bank deposit slip receipts. Law enforcement conducted a financial investigation into the bank accounts associated with the recovered deposit slips from the June 23, 2022 arrest.

During the financial investigation, Altura Interactive LLC was identified as a shell business entity associated with the DTO/MLO. Analysis revealed that a bank account for Altura Interactive LLC received structured cash deposits and also incoming wires from other shell entities. Bank

surveillance videos showed another individual, SOI-2, making structured deposits into the Altura Interactive LLC account.

Law enforcement also identified Victor Ernesto Villagomez Sanchez ("Sanchez") as an individual involved in the MLO. The investigation determined that Sanchez purchased the Atlanta Property in 2021. Sanchez was the sole owner.

(e) On September 21, 2022, during a traffic stop by the Dekalb County Police Department ("DCPD") SOI-1 was arrested for speeding and driving without a license. During the interaction with the driver, DCPD Officer M. Tillman ("Tillman") deployed his K-9, ("Cole,") to conduct a free-air sniff around the outside of the Nissan Versa . Cole alerted to the presence of narcotics. Subsequent search of the vehicle by DCPD, Officers R. Viar ("Viar") and Tillman yielded a cardboard box in the trunk of the Versa, which contained $239,900 in U.S. Currency and a plastic bag. Canine Cole provided a positive alert on the bag containing the currency. DCPD contacted DEA and TFO's T. Harvey and D. Grimwade responded to the scene of the traffic stop to speak with SOI-1 and take custody of the USC. A label on the box contained the address 2795 Peachtree Road, Unit 909, Atlanta, GA 30305.

(f) SOI-1 stated he did not know who the money belonged to. SOI-1 stated that he met some guys at a Mexican party a few nights prior. One of the guys he met at the party named "Cheeto" called him the next Tuesday. The two

met in person and "Cheeto" gave SOI-1 a box that contained the $239,900 in U.S. Currency. He asked SOI-1 to take the box to Plaza Fiesta (GPS showed it was the Plaza Las Americas, 733 Pleasant Hill Rd, Lilburn, GA). SOI-1 advised prior to this incident, he had never picked up and delivered money before.

DEA agents advised SOI-1 that they knew he was not being truthful as they had seen him pick up and drop off money previously.

(g) SOI-1 then explained that he flew into the United States from Mexico on a Delta flight to Chicago. He stayed in Chicago for two days, then rented a black Mazda CX5 from Hertz and drove to Atlanta. He advised that he drove to his friend's condominium, the Atlanta Property. He stated that the owner of the Atlanta Property was Victor Villa Gomez and that he lived in Mexico.

(h) SOI-1 gave DEA consent to search the Atlanta Property along with his cell phone. During the search of the Atlanta Property, DEA located a safe in the closet of the master bedroom where SOI-1 had indicated that he was staying. SOI-1 provided the combination of the safe and indicated that there was approximately $100,000 in U.S. Currency. DEA counted and seized $352,439 in U.S. Currency from the safe in the Atlanta Property. DEA also located a money counter on the table in the condo bearing the name of SOI-2. Following the completion of the search of the Atlanta Property, the

     $352,439 in U.S. Currency was set up for a blind canine sniff. Dekalb County Canine "Cole" performed a sniff and gave a positive alert to the bag containing the currency found in the Atlanta Property.

(i)  DEA asked SOI-1 how many times he had been to the United States and SOI-1 stated he had been to the United States seven or eight times, of which four were to Atlanta. Agents asked SOI-1 about the pickups for the money in the trunk. SOI-1 stated he did receive some of the money the day prior at Mana's Restaurant on Piedmont Road. SOI-1 stated he had made five or six pickups recently, but he was never told the amount and didn't know the real names of the men. SOI-1 stated that he had made approximately fifteen pickups total, and that he sometimes takes the money to the Atlanta Property. He would then receive a call through his cell phone application and would be told where to take the money.

(j)  During the ongoing investigation, law enforcement interviewed SOI-2. SOI-2 explained that she/he assisted the MLO wherein she/he would receive bulk currency, count the currency, and transmit it to others in the MLO. SOI-2 further explained that she/he was present with Sanchez when he purchased the Atlanta Property. She/he explained that following the purchase of the Atlanta Property she/he never saw Sanchez return to it again. SOI-2 stated that in the standard course of business she/he would be contacted to pick up bulk currency, transport the bulk currency to the

        Atlanta Property or to her/his residence, and then wait for further instructions as to which bank accounts to deposit the bulk currency. SOI-2 also stated that she/he ordered two money counters, one for her/his residence and one for the Atlanta Property. SOI-2 further stated that she/he helped the money laundering organization by setting up an LLC business and obtaining a business license using the Atlanta Property location. SOI-2 also stated that on at least three occasions, SOI-1 directed her/him to deliver between $300,000 and $500,000 to an individual at the Atlanta Property. In summary, SOI-2 acknowledged that she/he made numerous bulk currency pickups, deposits, and wires at the direction of those in the MLO and did so until SOI-1 was arrested.

(k)    In August of 2023, Sanchez sold the Atlanta Property to a third party. Based on agreement of the parties, the sales proceeds due to Sanchez were issued to the U.S. Marshals Service for holding pending the resolution of a forfeiture action.

8.    Based on the information and allegations set forth herein, there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Currency constitutes, or is traceable to:

(a)    property involved in maintaining drug-involved premises as set forth in 21 U.S.C. § 856(a)(1); and

(b) property involved in and property facilitating a Controlled Substances Act violation as set forth in 21 U.S.C. § 841 et al.

(c) property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or 1956(a)(1)(B)(i) and/or 1957;

(d) property involved in an illegal money transmitting business, in violation of 18 U.S.C. § 1960;

(e) proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(h).

## **CONCLUSION**

9. By reason of these premises, and pursuant to 18 U.S.C. § 981(f) and 21 U.S.C. § 881(h), whereby the Plaintiff's right, title and interest in and to the Defendant Currency relates back to the commission of the act giving rise to the forfeiture, the Defendant Currency has become and is forfeited to the United States of America, to be disposed of pursuant to Supplemental Rule G(7)(c) for Admiralty or Maritime Claims and Asset Forfeiture Actions, 18 U.S.C. § 981(d), 21 U.S.C. § 881(e), and other applicable laws.

WHEREFORE, Plaintiff prays that due process be issued to enforce the forfeiture of the Defendant Property, *in rem*; that a Warrant for Arrest of the Defendant Currency be issued; that due Notice be given to all interested persons to appear, make claim, answer and show cause why the forfeiture should not be decreed; that the Defendant Currency be decreed condemned and forfeited to the United States of America for disposition according

to law; and that Plaintiff have such other and further relief as the Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: *s/Carrie Fisher Sherard*
Carrie Fisher Sherard #10134
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, SC 29601
(864) 282-2100